In re Franklin GOLDBERG, Debtor.

BANK OF ALEX BROWN, a California Banking Corporation, Plaintiff,

v.

Franklin GOLDBERG, Juna Goldberg, M. Kirk Gibbs, Trustee, Defendants.

Bankruptcy No. 988–02323–13. Adv. No. 989–0013.

United States Bankruptcy Court, E.D. California.

June 28, 1993.

Bradley S. Towne and Ken R. Whittal from Moyer, Buechner & Towne, Sacramento, CA, for Bank of Alex Brown.

Dan Nelson, Modesto, CA, for debtor Franklin Goldberg.

## MEMORANDUM OF DECISION AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter comes before the court on Bank of Alex Brown's ("Bank") complaint to determine dischargeability of debt, for violation of trust, and for declaratory relief against Chapter 13 debtor Franklin

Goldberg, debtor's wife, and the Chapter 13 Trustee.

In the pretrial stage of the proceedings, Bank dropped its claim for determination of dischargeability and indicated that it only sought imposition and foreclosure of a constructive trust on Mr. Goldberg's current residence. Although served, no answers were filed nor appearances made by Mrs. Goldberg or by the Chapter 13 trustee. Bank did not indicate how or whether it wanted to continue to proceed against Mrs. Goldberg or the Chapter 13 trustee, but Bank's trial presentation and briefs implied that it was proceeding only against Mr. Goldberg.

After trial and submission of briefs, the court took the matter under submission. This memorandum decision and order shall constitute findings of fact, conclusions of law, and judgment as required by Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

### FACTS AND BACKGROUND

In February 1987, the Goldbergs entered into a contract with Citation Homes to purchase a residence in Stockton, California. The Goldbergs made a $17,000 down payment which was initially held in escrow by Stewart Title. The Goldbergs failed to qualify for financing, and the sale was canceled.

Both Stewart Title and Citation Homes issued full refund checks to the Goldbergs for the $17,000 down payment. On April 16, 1987, Stewart Title issued and sent a $17,056.47 check. Two weeks later, on April 28, 1987, Citation Homes issued and sent a $17,016.47 check. Stewart Title's refund check was issued by mistake. Stewart Title attempted to stop payment on its check, but the Goldbergs had already been paid on the check. Stewart Title assigned its rights against the Goldbergs to Bank.

Bank contends that proceeds from Stewart Title's mistakenly issued check are traceable to the Goldberg's current residence, which was purchased after the check was paid, and seeks imposition of a constructive trust on the residence under California law. Mr. Goldberg responds that Bank cannot assert a constructive trust on his residence because of lack of specific tracing to that property.

What the Goldbergs did with the refund check was subject to conflicting and confusing evidence. The only facts not subject to serious dispute were that the Goldbergs received the checks, cashed them, and commingled the proceeds with personal funds in one or more bank accounts. Bank relies heavily on alleged admissions in pretrial interrogatories to prove that Mr. Goldberg used the specific check proceeds to put a $15,000 down payment on his current residence. Notwithstanding the admission-like responses to pretrial interrogatories, debtor strongly opposes any evidence or suggestion that the check proceeds are even remotely traceable to his residence. However, rather than presenting evidence of what was actually done with the check proceeds, Mr. Goldberg merely emphasizes the Bank's inability to show specific tracing.

In reviewing the matter for decision after trial, the court noted facts suggesting preclusion of Bank's constructive trust claim and requested further briefs. Specifically, the court was concerned that (1) Bank had previously sued the Goldbergs in state court for, *inter alia*, imposition of a constructive trust, and (2) Mr. Goldberg had confirmed a plan over Bank's objections which treated Bank as an unsecured creditor.

Prior to Mr. Goldberg filing his bankruptcy petition, Bank sued both Mr. and Mrs. Goldberg in a state court to recover the refund and for imposition of a constructive trust. The Goldbergs failed to appear or defend, and their default was entered. Before Bank applied for default judgment, however, Mr. Goldberg filed his Chapter 13 case. Subsequently, Bank applied for and obtained a default judgment for the amount of the check plus interest and costs. No constructive trust was imposed in the judgment.

Mr. Goldberg's amended plan treated Bank as an unsecured creditor. Bank had

filed a proof of secured claim based on judicial liens filed post-petition. Debtor's plan avoided fixing of Bank's judicial liens under section 522(f) as a judicial lien impairing debtor's homestead exemption. The amended plan did not mention Bank's adversary proceeding which had been commenced prior to confirmation or debtor's outstanding objection to claim which was apparently continued to be heard after or concurrent with Bank's adversary proceeding. Bank received notice of the confirmation hearing and filed an objection. Bank's objection, however, did not challenge the propriety of avoiding Bank's judicial lien and did not complain that his plan failed to mention or provide for Bank's outstanding adversary proceeding to impose a constructive trust on Mr. Goldberg's residence. Mr. Goldberg's plan treating Bank as an unsecured creditor was ultimately confirmed over Bank's objections.

## DISCUSSION

### 1. *Preclusion*

■ Neither the preclusive effect of Bank's state-court judgment nor plan confirmation proceedings in this court were raised by Mr. Goldberg in his answer or during trial. Although preclusion is an affirmative defense which may be waived if not raised, the court may raise the issue sua sponte when it has knowledge of prior proceedings so long as the parties are given opportunity to brief the issues. *See United Home Rentals v. Texas Real Estate Comm'n*, 716 F.2d 324, 330 (9th Cir. 1983), *cert. denied*, 466 U.S. 928, 104 S.Ct. 1712, 80 L.Ed.2d 185 (1984); *State of Nevada Employees Assoc., Inc. v. Keating*, 903 F.2d 1223, 1225 (9th Cir.), *cert. denied*, 498 U.S. 999, 111 S.Ct. 558, 112 L.Ed.2d 565 (1990).

As requested ,by the court, the parties filed briefs regarding the preclusive effect of Bank's state-court default judgment and confirmation of Mr. Goldberg's amended plan. For the reasons set forth below, the court determines that trial and relief in this matter was not precluded.

### a. *Bank's state-court default judgment.*

■ The issue of whether Bank's default judgment has preclusive effect is resolved indirectly pursuant to the Ninth Circuit's recent decision in *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir.1992). In *Schwartz*, the Ninth Circuit determined that actions taken in violation of the automatic stay are void. In so holding, the court resolved a previously unsettled question in the circuit whether acts in violation of the stay were void or voidable.

Here, Bank obtained the Goldberg's default prior to commencement of bankruptcy, but applied for and obtained the default judgment after commencement of Mr. Goldberg's bankruptcy proceedings and in violation of the automatic stay as to Mr. Goldberg.[1] Accordingly, under *Schwartz*, Bank's default judgment is void as to Mr. Goldberg.[2]

■ To determine the preclusive effect of a state-court judgment in federal court where a remedy is sought on a state-law claim previously raised in state court, the court is required to apply preclusion rules of the rendering state. *See* 28 U.S.C. § 1738. California law requires that for principles of res judicata to apply, a final judgment is required. *See* 7 B.E. Witkin, *California Procedure, Judgment* §§ 211 et seq. (3d ed. 1985). Here, since Bank's judgment is void as to Mr. Goldberg, it cannot be considered a final judgment, and principles of res judicata do not preclude determination of Bank's present constructive trust claim as to him.

---

**1.** Mrs. Goldberg was not a debtor and, although not addressed, would apparently not be protected by the co-debtor stay of section 1301 in this circumstance. Hence, Bank's application for and obtaining a default judgment did not violate any bankruptcy stay as to her.

**2.** Again, since no stay was violated as to Mrs. Goldberg, the state-court default judgment against her would not be void under *Schwartz.*

**b. *Confirmation of Chapter 13 plan.***

■ Generally, confirmation of a Chapter 13 plan binds creditors to terms of the plan and is res judicata as to all issues that were, or could have been, contested. 11 U.S.C. § 1327(a); *see also Anaheim Sav. & Loan Assoc. v. Evans (In re Evans)*, 30 B.R. 530, 531 (Bankr. 9th Cir.1983). However, notwithstanding the broad language of section 1327(a), the majority of courts have been unwilling to allow confirmation to affect secured claims. *See, e.g., Fireman's Fund Mortgage Corp. v. Hobdy (In re Hobdy)*, 130 B.R. 318 (Bankr. 9th Cir. 1991); *In re Parker*, 148 B.R. 604 (Bankr. Id.1992); *In re Roberts*, 138 B.R. 84 (Bankr.N.D.Okla.1992); *Owens v. Fleet Mortgage (In re Owens)*, 132 B.R. 293 (Bankr.E.D.Pa.1991). The recurring rationale of the courts in limiting the effect of confirmation is that to interpret section 1327 so that it could affect secured claims would be in conflict and inconsistent with other portions of the Code which are specifically designed to affect secured claims (e.g., section 502) and that such procedures require a separate notice and hearing or a higher quality of notice and hearing than is provided for confirmation.

■ This case presents a slightly different situation than those dealt with in the cases cited above as Bank does not have an established secured claim, but is seeking to establish the validity and extent of an interest in debtor's property. Nevertheless, the same rationale used by the courts in those cases applies here. Bank properly commenced an adversary proceeding as required by Bankruptcy Rule 7001 to establish its interest, and the action was pending at the time of confirmation. To allow confirmation to bar Bank from completing litigation on its outstanding claim would circumvent and nullify the protections and procedures offered and required in adversary proceedings to determine interests in property. While Mr. Goldberg properly noticed Bank of confirmation and Bank did

not object, he did not notice Bank that he intended to moot Bank's adversary proceeding absent objection.[3] Confirmation cannot circumvent procedures to determine rights where an adversary proceeding is required by the Federal Rules of Bankruptcy Procedure. Thus, Bank's claim to a constructive trust could not have been properly contested and determined as part of the confirmation process, and Bank is not precluded from seeking relief through its adversary proceeding.

**2. *Constructive Trust***

■ In bankruptcy proceedings, the nature and determination of rights in property are governed by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). In this case, Bank contends that under California law, the court should impose a constructive trust on the debtor's current residence which was purchased with funds traceable from the mistakenly issued refund check.

■ A constructive trust is an equitable remedy imposed to prevent unjust enrichment and may be used where property has been wrongfully acquired or detained. *See Lazar v. Hertz Corp.*, 143 Cal.App.3d 128, 139, 191 Cal.Rptr. 849 (1983); *Taylor v. Fields*, 178 Cal.App.3d 653, 665, 224 Cal. Rptr. 186 (1986). California has codified general principles for imposition and recognition of constructive trusts.

■ § 2224. Wrongful Act

One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.

Cal.Civ.Code § 2224 (West 1992); *Weiss v. Marcus*, 51 Cal.App.3d 590, 600, 124 Cal.

---

**3.** In her concurring opinion in *Fireman's Fund Mortgage Corp. v. Hobdy (In re Hobdy)*, 130 B.R. at 321–22, Judge Perris concludes that while a properly noticed confirmation may bind the creditor to what may be distributed under the plan, it cannot in any way affect the creditor's claim as filed or established through proper procedures.

Rptr. 297 (1975) (statute [4] states general principles for court's guidance rather than restrictive rules). The party seeking a constructive trust remedy has the burden of showing by clear and convincing evidence that it is entitled to the relief sought. *Cameron v. Crocker-Citizens Nat'l Bank,* 19 Cal.App.3d 940, 943–44, 97 Cal.Rptr. 269 (1971).

Applying the general principles set forth in section 2224, the court is satisfied that the mistakenly issued check received by Mr. Goldberg was subject to a constructive trust which this court must recognize and impose. First, it is clear that absent Stewart Title's mistake, Mr. Goldberg would not have received the $17,000 check. Second, because the check was issued erroneously, Bank's rights to the check proceeds are clearly greater than those of Mr. Goldberg. Accordingly, Mr. Goldberg initially held the refund check as an involuntary trustee of a constructive trust with Bank as beneficiary.

■ Bank, however, is not seeking the imposition of a constructive trust on the proceeds of the check, but on Mr. Goldberg's residence which was allegedly purchased from those proceeds. In order to assert a constructive trust in property acquired from property initially subject to a constructive trust, tracing must be established. Without tracing, the beneficiary is relegated to the position of a general unsecured creditor. *See People v. California Safe Deposit & Trust Co.,* 175 Cal. 756, 759, 167 P. 388 (1917).

Bank's evidence that the check proceeds were directly traceable to Mr. Goldberg's current residence was speculative and relied heavily on alleged admissions in pretrial interrogatories. Mr. Goldberg denied that the discovery responses were admissions, and based on the evidence and testimony presented, would have the court believe that he was invincibly ignorant concerning the $17,000 boon and had no idea what happened to either of the $17,000 refund checks. Of course, most, if not all, evidence regarding tracing of the mistakenly paid refund was in Mr. Goldberg's control. The court, therefore, exercises its discretion to construe the evidence in Bank's favor. Although the court cannot determine that the check proceeds were directly and specifically used to purchase the residence, the court is satisfied and finds that Bank has established by clear and convincing evidence that Mr. Goldberg commingled the proceeds into existing bank accounts that were later drawn upon to make a $15,000 down payment on his current residence.

■ The issue of tracing where trust funds have been commingled with personal funds has fostered divergent rules and fact-sensitive case precedents. These rules generally favor beneficiaries and are premised on preventing unjust enrichment of the trustee. *See* George G. Bogert & George T. Bogert, *Trusts and Trustees* § 928 (2d ed. 1982).

Although the court has not been directed to California precedent that provides an exact factual match to this case, the California Supreme Court has addressed similar tracing problems in *Mitchell v. Dunn,* 211 Cal. 129, 294 P. 386 (1930).[5] In *Mitchell,* the plaintiff sought to trace trust funds to a residence bought by the defendant-trustee. Similar to this case, the defendant-trustee had commingled trust funds with personal funds in one account, purchased a residence drawing on that account, and depleted the account through withdrawals for personal expenses.[6] The defendant-trustee argued that her residence was bought with personal funds, and the remainder of the account containing the trust funds were used for the personal

---

**4.** Former section 2224 was repealed by Stats. 1986, c. 820, § 7, operative July 1, 1987. The prior statute, construed by the *Weiss* court, was substantially similar to the present codification.

**5.** Although *Mitchell* involved an express trust, that difference, for reasons explained below, is not material to the resolution of this dispute.

**6.** In *Mitchell,* as in this case, there was no evidence presented as to whether there was any money left in the subject account, but it was presumed depleted by the parties.

expenses. The trust funds could not, therefore, be traced to any identifiable asset. In support of her position, the defendant-trustee relied on the established presumption that where a trustee of an express trust commingles trust funds with personal funds, the trustee acts innocently of wrongdoing and any withdrawals are presumed to be from personal funds, thus preserving the corpus of the trust in the commingled account. The court refused to apply the presumption to the detriment of the beneficiary, because (1) the rule had been developed to aid, not hinder, beneficiaries in tracing trust funds, and (2) the defendant trustee's conduct was fraudulent. The court further determined that where the trustee used up all the commingled funds, the trust funds would be deemed traceable to permanent investments made with the commingled funds.

> The specific piece of property involved was purchased with money taken from a fund containing trust moneys. All other moneys were dissipated. The law will not permit the trustee to say that the only permanent investment made with moneys from the fund was with personal funds, and that the dissipated funds belonged to the cestui. Under such circumstances it must be held that the property was purchased with trust funds, and that the defendant holds the title in trust for plaintiff.

211 Cal. at 136–37, 294 P. 386.

The facts in this case are similar, and the court is persuaded by the rationale in the *Mitchell* case which would allow tracing to be established to permanent assets where commingled trust funds have been dissipated for personal uses. Mr. Goldberg initially held the refund check as involuntary trustee for Bank's benefit. Proceeds of the check were commingled with personal funds in Mr. Goldberg's accounts. A residence was purchased using funds from these accounts. The accounts were then dissipated by Mr. Goldberg for personal uses. Under these facts, the court cannot accept Mr. Goldberg's claim that his residence was bought with personal funds while his personal expenses were paid with funds subject to Bank's constructive trust.

Mr. Goldberg resists the liberal tracing rule set forth in *Mitchell* and argues that evidence showing exact or strict tracing should be required. First, Mr. Goldberg attempts to distinguish *Mitchell* on the basis that (1) the trust in *Mitchell* was an express trust rather than an involuntary trust and (2) the defendant-trustee in *Mitchell* was guilty of wrongful conduct while Mr. Goldberg acted innocently of wrongdoing. Second, Mr. Goldberg argues that his insolvency renders *Mitchell* inapplicable.

■ Mr. Goldberg's attempt to distinguish *Mitchell* is ineffective to render the rule announced therein inapplicable. First, other than the existence of a bare factual distinction, the court has not been apprised of any reason why the tracing rule applied in *Mitchell* should not apply to constructive trusts as well as express trusts. Second, wrongdoing or culpability is not a requisite for application of the rule in *Mitchell*. The liberal tracing rule announced in *Mitchell* was based not on the defendant-trustee's fraud, but on principles of equity to prevent unjust enrichment of the defendant trustee.[7] This court, like the court in *Mitchell*, will not allow Mr. Goldberg to be unjustly enriched based on argument that the only permanent investment from the commingled funds was drawn from his personal funds and the Bank's portion of the commingled funds were used for nonpermanent and untraceable personal expenses.

■ Mr. Goldberg's further argument for strict tracing that his insolvency renders the liberal tracing rule in *Mitchell* inapplicable has some merit. California law as well as bankruptcy law requires

---

7. The primary emphasis placed on the defendant-trustee's "wrongful" conduct in *Mitchell* was aimed at overcoming the presumption for express trusts that a trustee acts to preserve the trust corpus and withdrawals from a commingled fund are from the trustee's personal assets rather than trust assets. The court held that where the trustee is guilty of wrongful conduct, the presumption does not apply. In this case, of course, the presumption does not apply because, as Mr. Goldberg has emphasized, the alleged trust is not an express trust.

that where a constructive trust is sought to be imposed against property of an insolvent debtor, strict tracing is required. *See, e.g., Mitchell,* 211 Cal. at 136–37, 294 P. 386; *Toys "R" Us, Inc. v. Esgrow, Inc. (In re Esgrow),* 645 F.2d 794, 797–98 (9th Cir. 1981); *Elliott v. Bumb,* 356 F.2d 749, 754 (9th Cir.), *cert. denied,* 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966); *see generally* E. Sherwin, *Constructive Trusts in Bankruptcy,* 1989 U.Ill.L.Rev. 297, 318–20; 4 *Collier on Bankruptcy* ¶ 541.13 (Lawrence P. King ed., 15th ed. 1993).

 Strict tracing requires a creditor to demonstrate that the property subject to the constructive trust was specifically and directly exchanged for the property sought to be recognized as trust property. Commingling trust funds with personal funds generally renders the trust unenforceable against the commingled funds or property acquired from the commingled funds. Rendering trusts unenforceable where funds are commingled ensures fairness to competing creditors who would otherwise be prejudiced by one creditor receiving preferential payment from commingled funds, or their product, where the debtor's personal funds and trust funds cannot be distinguished.

 The court has determined that Bank has not demonstrated direct and specific tracing of the refund to the residence. Under the strict tracing rule (in the event of insolvency) set forth above, such a determination would normally defeat Bank's attempt to have its constructive trust recognized in property acquired from Mr. Goldberg's commingled accounts. However, the specific facts of this case indicate that strict tracing is not mandated and liberal tracing should be permitted to preserve Bank's interest.

 The rationale for strict tracing where the debtor is insolvent is to protect unsecured creditors from being prejudiced by a creditor with a similar claim from receiving priority payment from assets that would otherwise be available to all creditors pro-rata. In this case, Mr. Goldberg's schedules show he has claimed $45,000 equity in his residence as exempt under California law. The evidence is that $15,000 of that equity came from Mr. Goldberg's commingled accounts and is subject to Bank's constructive trust under liberal tracing rules. If strict tracing rules were applied, Bank could not follow its trust into the residence, and Bank would be relegated to the status of an unsecured creditor. However, because the commingled funds have been invested in an exempt asset, unsecured creditors would have no claim to the product of the commingled account. Under this scenario, rather than protecting all creditors and ensuring pro-rata sharing of assets, Mr. Goldberg would be the sole benefactor of his having commingled the mistakenly issued check funds with his own. Since the rationale for strict tracing does not apply in this case, the rule should not and will not be applied. *See* Cal.Civ. Code § 3510.

 In addition, it appears that recognizing Bank's constructive trust may ultimately benefit unsecured creditors rather than harm them. First, the claimed homestead exemption on debtor's residence does not prevent recognition and enforcement of Bank's constructive trust. Since Bank's constructive trust arose at the time of the wrongful receipt of the funds, debtor cannot obtain a personal exemption in the product of such funds to the exclusion of the constructive trust claimant. *See, e.g., Mitchell,* 211 Cal. at 136, 294 P. 386. Thus, the Bank's constructive trust is prior to an otherwise valid exemption. Second, the Ninth Circuit has held that a constructive trust or equitable lien is subject to the bankruptcy trustee's section 544 "strong arm" powers and may be voided to the extent voidable by a bona fide purchaser under state law. *National Bank of Alaska v. Erickson (In re Seaway Express Corp.),* 912 F.2d 1125, 1128–29 (9th Cir. 1990) *Chbat v. Tleel (In re Tleel),* 876 F.2d 769, 770 (9th Cir.1989).[8] The facts indicate

---

**8.** The court notes the apparent conflict between the Ninth Circuit's decisions cited above regarding avoidance of constructive trusts and the Ninth Circuit's decision in *Torres v. Eastlick (In*

that Bank's constructive trust was not perfected prior to Mr. Goldberg's bankruptcy filing, thus Bank's interest may be avoided pursuant to section 544. If avoided pursuant to section 544, Bank's constructive trust would be preserved for the benefit of the estate,[9] 11 U.S.C. § 551, allowing unsecured creditors to share equally in the value of the avoided interest.[10]

### ORDER

Based upon the foregoing, the court orders that (1) a constructive trust is recognized on debtor's residence in the amount of $15,000 from the date of debtor's investment of the funds into the residence; (2) a copy of this memorandum decision and order be served on the Chapter 13 trustee for purposes of the trustee considering an avoidance action and modification of debtor's Chapter 13 plan, and, if no action is brought within 20 days, for the clerk to provide notice of this decision and order to unsecured creditors; and (3) to the extent Bank is not stayed by the automatic stay of section 362, Bank is enjoined from foreclosing on its interest without leave of court.

re North American Coin & Currency, Ltd.), 767 F.2d 1573 (9th Cir.1985). In Torres, the court stated in dicta regarding constructive trusts that "[b]ankruptcy trustees have been held to have no interest in property acquired by fraud of bankrupts, as against the rightful owners of the property." 767 F.2d at 1576 (citations omitted). This court need not decide how the dicta in Torres is affected by Seaway Express and Tleel, because the Bank's constructive trust claim is premised on mistake rather than fraud.

9. The court reiterates that Bank's constructive trust is not subject to Mr. Goldberg's homestead exemption. If Bank's interest were avoided and preserved under sections 544 and 551, that preserved interest would also be prior to Mr. Goldberg's homestead exemption.

10. In a Chapter 13 case, creditors would share in the value of the avoided interest via the liquidation equivalency test of section 1325(a)(4) which requires that property distributed under the plan be no less than unsecured creditors would receive in a Chapter 7 liquidation. In a liquidation, the value of Bank's preserved constructive trust interest would be available for prorata distribution to unsecured creditors.